UNITED STATES, Appellee

v

FORREST D. WISE, Private E–2, U. S. Army, Appellant

6 USCMA 472, 20 CMR 188

No. 6937

Decided November 4, 1955

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*

*Captain Vernon M. Culpepper* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Lieutenant Colonel Andrew D. Kane* and *First Lieutenant Arnold I. Burns.*

Opinion of the Court

GEORGE W. LATIMER, Judge:

I

This and its companion case, United States v Laurie, 6 USCMA 478, 20 CMR 194, present the single issue of whether a convening authority has a duty to consider the facts and circumstances

found in each individual case to determine whether he will remit or suspend a punitive discharge. Because the issue here granted involves post-trial proceedings, a statement of the facts surrounding the substantive offenses is not required. Only those necessary to place the question before us in its proper perspective will be related.

The accused pleaded guilty to two specifications alleging violation of Article 86, Uniform Code of Military Justice, 50 USC § 680. The first specification alleged an absence without leave from September 30, 1954, to October 5, 1954. The second specification alleged a similar offense with the period of absence running from October 8, 1954, to December 17, 1954. A sentence of confinement at hard labor for six months, total forfeitures, and a bad-conduct discharge was assessed against the accused by the court-martial. It, together with the findings of guilt, was affirmed by both the convening authority and a board of review. We granted review to determine whether the action taken by the convening authority met the standards imposed on him by the Code and the Manual for Courts-Martial.

While it may be unnecessary to a disposition of this case, we believe it worthwhile to mention that a post-trial clemency review was made by a member of the Judge Advocate General Corps. It is physically present in the file but it goes unmentioned in any of the subsequent documents and the Staff Judge Advocate's report suggests it could not have been given consideration by anyone but the author. Without concerning the reader with the details of the review, the interviewing officer set up facts which made a suspension of the punitive discharge a matter worthy of consideration. As a matter of some moment, he recommended that the forfeitures and confinement imposed by the court-martial be executed but that the bad-conduct discharge be remitted or its execution suspended.

The error, if any, of the convening authority which caused us to grant review arises out of the following facts and circumstances. This case was tried

**474**

on January 18, 1955, and the sentence was affirmed by the reviewing officer on January 27, 1955. On January 21, 1955, he announced a policy which in substance was as follows: That during the period when the strength of the Army was being reduced—the period here involved—he would not consider the retention in the military service of any individual who had been sentenced to a punitive discharge. As a result of the adoption of that policy, information was sent out to legal officers in the particular Army area to give no consideration to recommending the remission or suspension of punitive discharges. The previous practice of including post-trial clemency reviews with their recommendations to the convening authority on sentences was curtailed sharply, if not eliminated, by the announced policy. By way of substitute, there is found in the Staff Judge Advocate's review in this particular instance the following remark: "In view of the policy of the convening authority, as announced 21 January 1955, no consideration has been given to the remission or suspension of the punitive discharge adjudged in this case."

II

Article 64 of the Uniform Code of Military Justice, 50 USC § 651, places an important duty squarely on the shoulders of the convening authority. By the provisions of that Article, he is directed to affirm only such sentence, or such part or amount of the sentence as he finds correct in law or fact, and as he in his discretion determines should be approved. The complete Article is as follows:

"In acting on the findings and sentence of a court-martial, the convening authority shall approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence shall constitute approval of the findings and sentence."

Article 71 of the Uniform Code of

Military Justice, 50 USC § 658, which deals with the execution and suspension of sentences, provides that the convening authority may suspend the execution of any sentence except a death sentence. No similar delegation of power has been given to the court-martial. Therefore, we conclude Congress was aware that if clemency was to be extended to an accused in the form of a suspended sentence at the trial level, it could only be granted by the convening authority. We believe it necessarily follows that by conferring that power only on the convening authority, Congress contemplated that he would consider each case on its merits.

In supplementation of the quoted provisions of the Code, the Manual for Courts-Martial, United States, 1951, suggests that a bona fide consideration of the sentence should be given by the convening authority in every case. Paragraph 88*b* states as follows:

"*Determining what sentence should be approved.*—In determining what sentence, or part thereof, should be approved, the convening authority will be guided by the principles stated in 76. The sentence approved should be that which is warranted by the circumstances of the offense and the previous record of the accused. Appropriate action should be taken to approve a less severe sentence when the sentence, though legal, appears unnecessarily severe. In approving severe sentences, consideration should be given to all factors, including the possibility of rehabilitation as well as the possible deterrent effect.

"The convening authority may properly consider as a basis for approving only a part of a legal sentence not only matters relating solely to clemency, such as long confinement pending trial or the fact that, as an accomplice, the accused testified for the prosecution, but any other pertinent factors."

In dealing specifically with suspension of sentences, paragraph 88*e*(1) of the Manual provides:

"At the time he approves a sentence, the convening authority may suspend the execution of all or any part of it except a sentence of death. Ordinarily, the purpose of suspending the execution of a sentence is to grant the accused a probationary period within which he may show by his conduct that he is entitled to have the suspended portion of the sentence remitted. The convening authority should suspend the whole of a sentence (except death) when it appears to him that such action will promote discipline and aid in the rehabilitation of the accused."

The Manual not only deals with cases and sentences generally, but it goes further and narrows consideration to the particular accused. Paragraph 88*e*(2) (*b*) carries out the idea that each person convicted of a crime should be weighed individually to determine his potential for redeeming himself. It states:

"*Suspending dishonorable or bad conduct discharge when sentence also includes confinement.*—If the approved sentence involves a dishonorable or bad conduct discharge and confinement, the convening authority may determine that the execution of the punitive discharge should be suspended to the end that the accused may have the opportunity of redeeming himself in the military service, but that the execution of the confinement should not be suspended. In such a case, he may suspend the execution of the punitive discharge until the release of the accused from confinement, or for a definite period thereafter, and provide in his action for the automatic remission of the suspended sentence as indicated in the preceding subparagraph."

It has long been the practice in the military services for courts-martial to make recommendations of clemency to reviewing authorities. The practice is undoubtedly a carry-over from early times when a convening authority was permitted to participate in the functions of the court-martial, but it is also a practice which presently carries the stamp of approval of the present Manual for Courts-Martial, United States, 1951, for paragraph 77*a* states:

"*Recommendation for clemency.*—

**475**

After the sentence has been announced, the defense may submit in writing for attachment to the record any matters as to clemency which it desires to have considered by the members of the court or the convening authority. The rules of evidence are not applicable to such matters, but they should not be cumulative of matters presented to the court before the sentence was announced.

"Mitigating circumstances which could not be taken into consideration in determining the sentence may be the basis of a recommendation for clemency by individual members of the court. The recommendation should represent the free and voluntary expression of the individuals who join therein. It should be specific as to the amount and character of the clemency recommended and as to the reasons for the recommendation."

The rationale of all the quoted provisions points clearly to a rule that an accused is entitled as a matter of right to a careful and individualized review of his sentence at the level of the convening authority. It is his first and perhaps best opportunity to have his sentence tempered by mercy and to obtain an additional chance to prove his worth to his service, and his country. A casting aside of the sentence review by a sweeping proclamation that all accused who receive a punitive discharge are to be discharged from the service, regardless of any showing made in their behalf, is not in keeping with that rationale. That view smacks too much of the principle that all military offenders must inflexibly and arbitrarily be tarred with the same brush of dishonorable service.

In numerous instances this Court has recognized that a thorough post-trial review and a fair appraisement of the appropriateness of sentence, as it may be influenced by clemency matters, is a valuable right accorded the accused after conviction. In United States v Gordon, 1 USCMA 255, 2 CMR 161, we said (page 262):

". . . the right to an impartial review is an important right which must be recognized in the military judicial system and an accused is entitled to have the record reviewed and the limits of his sentence fixed by one who is free from any connection with the controversy."

It would appear that if it is a valuable right to have the sentence passed upon by a convening authority who is free from any connection with the controversy, it is equally important to have one's sentence considered by a convening authority who does not arbitrarily refuse in advance to mitigate an important part of the sentence, no matter what factors might be brought to his attention. Moreover, it seems axiomatic to state that if a convening authority can group all cases in one category and by a policy fiat decide in advance not to suspend any punitive discharge, the painstaking efforts of Congress and the framers of the Manual to prescribe an enlightened way of dealing with restoration to duty and rehabilitation of military offenders would go for naught. We, therefore, conclude that the policy announced by the convening authority is contrary to the intent and spirit of the Uniform Code of Military Justice and the provisions of the Manual enacted pursuant thereto.

The Government seeks to sustain the action of the convening authority by asserting that accused has no legal basis for complaint, because the reviewing officer is under no legal compulsion either to exercise clemency or to act on factors which may have a mitigating or extenuating effect. In presenting their arguments, counsel for the Government overlook the difference between the duty to consider facts and circumstances which are needed to decide a question, and the power to rule in a certain manner. We, of course, recognize the limitation on our power to require the convening authority to act in any desired manner. We understand fully that he has discretion in this field and we interpret this to mean he has the power or right to act officially according to the dictates of his own judgment and conscience uncontrolled by the judgment and con-

science of others. Therefore, if accused was seeking to raise error because the convening authority had not seen fit to suspend the execution of the sentence, we would not have entertained his petition for review. But in actuality he requests something entirely different, as he asks that the convening authority be required to consider with an open mind those matters which accused seeks to offer for clemency purposes. We fail to understand how a convening authority can act intelligently unless he does that. We have always assumed that when a reviewing officer leaves a sentence—or any of its parts—unsuspended, he has done at least two things. First, he has addressed himself to those matters, within or without the record, which reflect on the desirability of suspending its execution. Second, upon the showing before him, he has conscientiously reached the conclusion that the particular accused was not entitled to that form of relief. We have consistently held that a convening authority is unfettered in his liberty of deciding on the appropriateness of a sentence and unlimited as to the sources from which he gathers the information which serves as the foundation for his action. Certainly, we have no desire to narrow his power by adopting a rule which has as its effect the control of his mental processes in deciding either way. But that is not to say that because he may be free to exercise his discretion in affirming or modifying the sentence, he is not required to consider the alternative of clemency before he decides. Stated somewhat differently, after being informed on the case he may rule on the sentence as he chooses, but he cannot, without abusing the power vested in him by the Code, refuse to listen.

Another facet of the Government's argument is the one advanced to the effect that paragraph 86*b* of the Manual for Courts-Martial, supra, sets out all matters which must be considered on review, and that having omitted any reference to appropriateness of sentence, by implication, that is a subject which may or may not be considered at the whim of the reviewer. That paragraph generally provides that before approving a finding of guilty of an offense or the sentence adjudged therefor, the convening authority must determine: (1) that the court was legally constituted throughout the trial and had jurisdiction over the offense and the person tried; (2) that the accused possessed the requisite mental capacity at the time of trial and mental responsibility at the time of the commission of the offense; (3) that the evidence was sufficient to establish each element of the offense; (4) that the sentence was legal; and (5) that there were no errors in the record which materially prejudiced the substantial rights of the accused. Because those matters are enumerated in the Manual, the Government argues that consideration of any other factors prior to the decision is discretionary. Even if the Manual provisions could be construed as narrowly as contended for by the Government, they would not aid its cause, as they would be contrary to Article 64 of the Code which requires that some consideration be given to the sentence besides whether it is within legal limits. But laying conflicts aside, the convening authority must consider the items enumerated above because the findings and sentence cannot be affirmed if any of the required matters are missing from the record. That, however, does not make the list all-inclusive, and perhaps the best manner in which to point out the error of the argument is to call attention to the Code provision which demands that the convening authority consider and affirm only such sentence as he finds correct in law and fact and determines in his discretion should be approved. That language in essence states that he must determine whether or not the sentence as imposed is appropriate factually and it should be apparent that appropriateness includes something more than legality. Of course, an appropriate sentence must be legal, but the reverse is not necessarily true. The maximum legal punishment is seldom imposed except in aggravated cases.

Lastly, the Government presses upon

our attention that there is nothing in this record to indicate ▮▮▮▮▮▮ the convening authority did not well and truly determine from the record or from independent sources that it would be inappropriate to suspend this punitive discharge. We, of course, have before us the convening authority's announced policy that he would not consider suspending any kind of punitive discharge and we have no reason to doubt that he acted pursuant to his own policy which was announced only six days before he acted on this case. The Government does not contend that the record shows affirmatively that he departed from his announced policy. It argues substantially as follows: The record recites that the convening authority has acted, and the presumption of regularity requires us to presume that he carried out the duties imposed upon him by the Code and the Manual. But, in determining whether in reviewing this record he complied with the statutory requirements, his signature alone cannot be considered as conclusive of his compliance. If the record was silent on that issue, we would be inclined to accept the presumption of regularity, but here we find evidence in the Staff Judge Advocate's review that no recommendation was made on the sentence because of the instructions given to him by his superior. When the record presented to us is considered from its four corners it overcomes the presumption of regularity, and it becomes reasonably certain that this case was processed in accordance with the policy declaration and not in compliance with law. While it may be convenient for a reviewing authority to consider all sentences routinely and without intelligent discrimination, a different duty has been placed on his shoulders by Congress. That duty cannot be avoided by a naked assertion that he has unlimited discretion in affirming a sentence.

The decision of the board of review is reversed. The record is referred to The Judge Advocate General of the Army for reference to any convening authority, other than the officer whose policy we condemn, for proper action.

Chief Judge QUINN and Judge BROSMAN concur.