## UNITED STATES, Appellee

v

## EDMUND R. SCOTT, Corporal, U. S. Army, Appellant

### 6 USCMA 650, 20 CMR 366

No. 6894

Decided February 17, 1956

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*

*Captain Vernon M. Culpepper* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Captain M. Douglas Hodges,* and *First Lieutenant Arnold I. Burns.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of two separate offenses of desertion, in violation of Article 85 of the Uniform Code of Military Justice, 50 USC § 679. As a result, he is presently sentenced to imprisonment for two years and six months, total forfeitures, and dishonorable discharge, not yet executed. In his petition for grant of review, he asserted four grounds for reversal of the findings and sentence. However, after a review of his assignments of error, we concluded that only the following two questions merited argument:

(1) Did the law officer err in overruling his motion for a dismissal of the Additional Charge of desertion on the ground of constructive condonation?

(2) Was he denied an impartial review of his sentence by the reviewing authority, as contemplated by the Uniform Code of Military Justice?

Since review was ordered in the instant case, we have settled the law on the second question. In ▆▆▆▆ ▆ United States v Wise, 6 USCMA 472, 20 CMR 188, and United States v Laurie, 6 USCMA 478, 20 CMR 194, the facts were on all fours with those shown in the present record. We there held it was prejudicial error for the convening authority to refuse to consider each sentence on its merits and, as a matter of policy, preclude the possibility of remission or suspension of punitive discharges. The principles set out in those cases are of recent pronouncement and need not be restated. They control the second issue, and the disposition of this case will be as indicated therein.

## II

The first issue framed arises out of the following set of facts and circumstances. At the time of arraignment, the accused moved to dismiss the Additional Charge on the grounds of constructive condonation. He supported his motion by a stipulation of facts which we quote:

"It is stipulated and agreed by and between the prosecution and the defense, with the consent of the accused, Corporal Edmund R. Scott, US 55 134 004, that on 18 May 1954 charges were preferred for violation of Article 85, Uniform Code of Military Justice, specification alleging a desertion from 19 June 1953 until 15 April 1954 against Corporal Scott; on 3 June 1954 a letter was sent from the Commanding General, Fifth Army, to the Commanding Officer of Fort Sheridan, Illinois, directing that the aforementioned charge be dismissed, the accused released from confinement, and an administrative determination made of the man's status, due to the fact that efforts to obtain admissible documentary evidence on this issue had met with negative results. Shortly before these charges were withdrawn (20 May 1954) the Fifth Army Staff Judge Advocate in his advice to the convening authority, Commanding General, Fifth Army, on the above charges, also referred to another absence without leave allegedly occurring between 23 October 1952 and 29 May 1953. This absence, now additional charge, had not been previously referred to trial. The Staff Judge Advocate referred to these charges in his advice to the convening authority on 20 May 1954 as follows: 'The accused had been apprehended in Chicago, Illinois, on 29 May 1953, after an AWOL beginning 23 October 1952 while en route from Fort Custer, Michigan, to his present organization. In view of the fact

that approximately a month has elapsed since the initial effort to obtain competent evidence of the present offense (the AWOL of 19 June 1954 to 15 April 1953), it is felt that further delay to obtain evidence of the previous offenses (AWOL from on or about 23 October 1952 to 29 May 1953) is not justified."

Aside from the stipulation, accused offered into evidence certain official documents, but they were held to be immaterial. They were copies of certain Special Orders, Headquarters, Fort Sheridan, in which the accused was assigned and reassigned to several different organizations. The orders were issued under the authority of Colonel Wade, Post Commander, and trial defense counsel contended they were relevant to establish that the accused had been unconditionally restored to duty.

A cursory reading of the quoted stipulation will disclose that it is inaccurate as to one period of absence. It goes without saying that an accused person could not be absent without leave from June 19, 1954, to April 15, 1953. Undoubtedly the years 1954 and 1953 were transposed and, to be certain of the true dates, it was necessary for us to look to the allied papers. We had no hesitancy in doing that, as the periods of time are not disputed in the brief on appeal.

With the stipulation corrected as indicated, there are three periods of absence shown by the record which are of importance to this issue, and chronologically they are as follows: The first period commenced October 26, 1952, and ended May 29, 1953. The inception of the second period was June 19, 1953, and it terminated April 15, 1954. The last absence started August 24, 1954, and it ceased December 17, 1954. So far as the record shows, prior to December 1954, accused was not charged with having committed any offense during the period October 26, 1952, to May 29, 1953. However, following his second period of absence, he was charged in one specification with having deserted the service from June 19, 1953, to April 15, 1954. After the pretrial investigation for that offense

had been conducted, the Staff Judge Advocate on May 20, 1954, recommended trial by court-martial. In reciting the facts in his pretrial advice to the convening authority, he made the following statement:

"On 19 June 1953 . . . the accused absented himself without proper authority and remained so absent until . . . 15 April 1954. He is charged with desertion in violation of Article 85, UCMJ.

"Copies of correspondence . . . reveal that the inception of the present offense arose out of the failure on the part of the accused to comply with a direct order to return to his organization on or about 18 June 1953. The accused had been apprehended in Chicago, Illinois, on 29 May 1953, after an AWOL beginning 23 October 1952 . . . In view of the fact that approximately a month has elapsed since the initial effort to obtain competent evidence of the present offense, it is felt that further delay to obtain evidence of the previous offenses is not justified.

. . . . .

"I recommend trial by general court-martial."

The convening authority was thus informed that the offense to be tried involved an absence for the period June 19, 1953, to April 15, 1954; that the offense had its source in an order given on June 18, 1953; that accused had been absent without leave from October 23, 1952, to May 29, 1953 (first offense); and that trial of the present offense should not be held up pending the acquisition of sufficient competent evidence on the first offense. As will be observed from the contents of the next quoted endorsement, the convening authority did not agree with the recommendation that the alleged desertion from June 19, 1953, to April 15, 1954, be tried by a court-martial, for by fourth endorsement dated June 3, 1954, he replied as follows:

"1. Examination of the attached file indicates that the available evidence failed to support the charge and specification against Corporal Edmund R. Scott, US 55 134 004,

Company A, Reassignment Company, 5043d Service Unit Personnel Center, Fort Sheridan, Illinois.

"2. It is apparent that the Personnel Center, Camp Atterbury, Indiana, to which the accused was ordered to report, on 19 June 1953, failed to make any entries then or later in the morning report if or when the accused did report thereto. Repeated efforts by your headquarters to obtain admissible documentary evidence on this issue have met with negative results, and it must be assumed that no competent evidence is now available.

"3. For the foregoing reason, the charges will be dismissed, the accused released from confinement, and administrative determination made of his status during the period in question."

Nothing further was done in the way of prosecuting the accused until after the third period of absence was terminated. Then a charge was prepared and the accused was alleged to have deserted from August 24, 1954, to December 17, 1954. Prior to trial, another charge was added and the desertion therein alleged was for the first period from October 26, 1952, until May 29, 1953.

It is accused's contention that, because the correspondence between the Staff Judge Advocate and the convening authority, which we have quoted above, mentions the absence for the first period, the dismissal of the charge covering the second period of time had the legal effect of dismissing the prior offense, and both were thereby condoned. The Chief Judge believes that this contention is sound. Because the sentence may be sustained on the basis of the conviction which is not contested here, and, to facilitate disposition of the case, I am willing to join in his result. However, for reasons which follow, I am certain that the offense alleged here as the Additional Charge was not condoned by the convening authority.

The Manual for Courts-Martial, United States, 1951, paragraph 68*f*, in

dealing with constructive condonation, provides:

"If an officer exercising general court-martial jurisdiction unconditionally restores a deserter to duty without trial with knowledge of the alleged desertion, this action amounts to a constructive condonation of the desertion and may be interposed in bar of trial subsequently ordered. If an officer exercising general court-martial jurisdiction shall have directed that a deserter be restored to duty but that he remain subject to trial for the offense, such a restoration is not a constructive condonation of the desertion and the individual so restored remains subject to trial."

An analysis of that section establishes that before the motion can be sustained, the record must show the following conditions: (1) an unconditional restoration to duty, (2) by an officer exercising general court-martial jurisdiction, and (3) with knowledge on his part of the alleged desertion. While it is doubtful that any one of the three conditions has been established, it is enough for my purposes to point out why I conclude the record fails to prove the first.

The officer exercising general court-martial jurisdiction was the Commanding General, Fifth Army. The information transmitted to him had to do with the offense arising out of the second absence. Charges had been prepared covering that crime only. A pretrial investigation had been completed, and the pretrial advice called for action on the pending charge. True it is that mention is made casually of the first absence, but charges had not been preferred on it and that offense had, in no way, gone beyond the quiescent stage. It is not mentioned in the directions from the convening authority contained in the fourth endorsement, and the provisions of that reply cannot be construed so broadly as to include a disposition of any offense except the one which the convening authority specifically ordered dismissed. However,

even if I take the view, arguendo, that both offenses had been considered by the officer exercising general court-martial jurisdiction, I would find a misunderstanding of the law on the part of accused in that he considers a direction to dismiss a charge, accompanied by a release from confinement, as amounting to an unconditional restoration to duty. Condonation requires more than that, but I will deal with the restoration to duty later. For the moment, I prefer to mention the fact that the Government did not seek to revive the charge that was dismissed. That might pose a question more difficult of solution, but all the Government did here was to prosecute a previously committed offense which had never been the subject of any charge. It is clear from the correspondence that that offense was not included within the direction to dismiss, and so its prosecution could only be terminated inferentially if the convening authority knew it was existing in suspense and, in dismissing the then pending desertion specification, intended to wipe the slate clean. Ordinarily the dismissal of one charge does not operate to dismiss a totally unrelated offense, and I find nothing in this record which causes me to take this case out from under the general rule.

It is also necessary to consider accused's contention that, even though the first offense may not have been dismissed, it could not be prosecuted because, in condonation, an unconditional restoration of accused to duty bars prosecution of all known prior offenses of desertion. Assuming, for the purposes of argument, that accused spells out the rule accurately and properly, it is irrelevant in this setting, as I find no unconditional restoration to duty. In interpreting the last paragraph of the convening authority's endorsement, I find an express reservation about accused's duty status. Interpreting the words in the endorsement according to their ordinary meaning, I do not find language affirmatively condoning either of the two separate desertions. The correspondence orders the dismissal of one, but it is silent as to restoration, and goes on to direct an administrative determination of accused's status during the period of absence. There is a burden on the accused to show an unequivocal purpose to overlook or excuse one offense, and the burden would be no less if he sought to stretch the purpose to cover others. Here the tone of the endorsement does not suggest a forgive-all attitude, rather it indicates no more than a punitive administrative method of dealing effectively with the failure of certain military personnel centers to maintain properly their personnel records by dismissing the action. While, to accomplish that purpose, the convening authority terminated one prosecution which inured to accused's benefit, I am unable to detect any express or implied desire to condone legally the identified charge, let alone an unmentioned one. The direction to dismiss, as it is worded, might go so far as to amount, in law, to forgiving that one offense, but it cannot be enlarged to cover a pardon for a prior unmentioned absentee crime committed by the accused. Condonation smacks of a willingness on the part of the convening authority to forgive and forget, conditioned on the accused accepting the responsibility of his service. The intention and conscious willingness to afford accused another chance to serve, without having to face up to either of his prior crimes of desertion, is not inferable from the words written and directions given by this convening authority. For that reason, I reject accused's claim that condonation bars his conviction for the first desertion.

The decision of the board of review is reversed, and the additional charge of desertion is dismissed. The record is returned to The Judge Advocate General of the Army for reference to a different convening authority for proper action on the initial review.

QUINN, Chief Judge (concurring in part and dissenting in part):

The Manual for Courts-Martial provides that all known offenses against an accused should be consolidated in one set of charges. Paragraph 32c.

It is apparent, therefore, that the staff judge advocate intended to advise the convening authority of the earlier offense and the reasons for not including it in the Charge Sheet submitted to him for his action. Consequently, the reference to the October 1952 offense was not a mere casual comment. On the contrary, it was an integral part of the staff judge advocate's advice and recommendation to the convening authority. Therefore, both offenses were officially before the convening authority. The fact that one was expressed in a formal specification and charge and the other was not is immaterial to our problem. The defense of condonation is ▮▮ not limited to instances in which a formal charge has been prepared. It is sufficient if the officer exercising general court-martial jurisdiction has "knowledge of the alleged desertion." Manual, supra, paragraph 68f. Here, he unquestionably had such knowledge. It may be noted parenthetically that the convening authority undoubtedly regarded the first offense as a probable act of desertion because the accused's unauthorized absence exceeded seven months and it was terminated by apprehension.

Turning to the convening authority's action, he does not say specifically that the accused is to be re- ▮▮ stored to duty, but that is his plain intention. The offenses are, in fact, closely related. Except for a very brief interval of military control which was accomplished only by his apprehension, the accused was continuously absent from his place of duty without authority. Reasonably, therefore, the convening authority could consider both absences as essentially representing a single transaction. It is significant that in referring to the June 1953 absence, he described it, in the singular, as "the charge and specification," but in the dismissal part of his action, he uses the plural word "charges." The difference of phraseology suggests that he intended to dismiss both charges.

Further evidence of the convening authority's intention that the accused be unconditionally restored to duty appears in his unqualified direction that the accused be released from confinement and that his status be determined administratively. See: AR 615–366; AR 615–368. Clearly implied in that order is a direction that the accused would not remain subject to trial "for the offenses brought to the convening authority's attention." Manual, supra, paragraph 68f. What was the accused to do during the time that he was not in confinement and awaiting the administrative decision as to whether he should be eliminated from the service because of his unauthorized absences? In my opinion, the convening authority expected and, in effect, ordered that the accused be restored to duty. Therefore, the law officer erred in overruling the accused's motion for a dismissal of the Additional Charge. Accordingly, I would set aside the findings of guilty as to that Charge.