IN THE CASE OF

UNITED STATES, Appellee

V.

Daniel D. DAVIS, Airman Basic
U.S. Air Force, Appellant

No. 02-0526

Crim. App. No. S30020

United States Court of Appeals for the Armed Forces

Argued December 10, 2002

Decided February 14, 2003

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, AND BAKER, JJ., joined

Counsel

For Appellant:  Captain L. Martin Powell (argued); Colonel
Beverly B. Knott,  Major Terry L. McElyea, and Captain Jennifer
K. Martwick (on brief); Major Jeffrey A. Vires.

For Appellee:  Lieutenant Colonel Lance B. Sigmon (argued);
Lieutenant Colonel LeEllen Coacher (on brief).

Military Judge:  George E. Pavlik

**This opinion is subject to editorial correction before final publication.**

Judge ERDMANN delivered the opinion of the Court.

Appellant, Airman Basic (AB) Daniel D. Davis, United States Air Force, was tried by special court-martial at Lackland Air Force Base, Texas.  Pursuant to his pleas, he was convicted of unauthorized absence and one specification each of wrongful use of cocaine and wrongful use of marijuana, violations of Articles 86 and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886, 912a (2002), respectively. A court of officer members sentenced him to a bad-conduct discharge and confinement for three months.  The convening authority approved the sentence as adjudged.  On March 7, 2002, the Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue:

> WHETHER IT WAS ERROR FOR THE CONVENING
> AUTHORITY TO PERFORM THE POST-TRIAL
> REVIEW OF APPELLANT'S CASE WHEN THE
> CONVENING AUTHORITY MADE STATEMENTS THAT
> DEMONSTRATED AN INELASTIC ATTITUDE
> TOWARD CLEMENCY.

For the reasons set forth herein, we answer the granted issue in the affirmative and return Appellant's case for a new action by a different convening authority.

## Facts

Pursuant to a pretrial agreement with the convening authority, Appellant providently pleaded guilty to using both cocaine and marijuana and to being absent without authority

2

from December 21, 2000 until he was apprehended on February, 16, 2001.

After trial, Appellant's defense counsel submitted a "memorandum for all reviewing authorities" entitled "Goode Response and Clemency Petition – *US v. Davis*."[1] The memorandum indicated that Appellant had petitioned the convening authority for clemency and stated the following:

> We object to MajGen [F], 37th TRW/CC, being the convening authority for purposes of taking action on the sentence in this case. During the early part of this year, MajGen [F] gave several briefings at Lackland Air Force Base, Texas where he discussed illicit drug use by military members as being on the rise. During the briefings, MajGen [F] also publicly commented that people caught using illegal drugs would be prosecuted to the fullest extent, and if they were convicted, they should not come crying to him about their situations or their families['], or words to that effect (Affidavit Attached). MajGen [F]'s comments seriously question his ability to act neutrally and impartially when determining whether AB Davis should receive any clemency on his case as AB Davis was indeed prosecuted and convicted of illegal drug use.
>
> A convening authority should be able to objectively and impartially weigh all the evidence in the Record of Trial and clemency matters submitted by the accused (*US v. Newman*, 14 MJ 474, CMA 1983). Based on his comments, specifically those regarding 'don't come crying to me about your situation or your families['],' we do not believe MajGen [F] can be fair and impartial in this capacity. In our opinion, these comments illustrate MajGen [F]'s unwillingness to impartially listen to clemency petitions by those convicted of illegal drug use.

---

[1] United States v. Goode, 1 M.J. 3 (C.M.A. 1975).

Appellant's defense counsel executed the affidavit referenced in the foregoing.  In the affidavit defense counsel indicated that several individuals had told him about briefings in which Major General (MG) F stated that "'individuals under his command who were caught using illegal drugs would be prosecuted to the fullest extent, and if they were convicted, they should not come crying to him about their situation or their families['],' or words to that effect."

An addendum to the staff judge advocate's post-trial recommendation, dated September 14, 2001, was silent about the convening authority's alleged comments.  Despite Appellant's objections, MG F took action approving Appellant's sentence as adjudged.


## Background

A convening authority is vested with substantial discretion when he or she takes action on the sentence of a court-martial. Article 60(c)(2) - (3), UCMJ, 10 U.S.C. § 860(c)(2) - (3) (2002); Rule for Courts-Martial 1107 [hereinafter R.C.M.].  As a matter of "command prerogative" a convening authority "in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part."  Article 60(c)(1) - (2).  The convening authority's broad authority is a significant reason that we have noted that the convening authority is an accused's best hope for sentence relief.  United States v. Lee, 50 M.J. 296, 297 (C.A.A.F. 1999); United States v. Howard, 23 C.M.A. 187, 192, 48 C.M.R. 939, 944 (1974).

Action on the sentence is not a legal review. Rather, a convening authority considers numerous factors and reasons in determining a sentence that is "warranted by the circumstances of the offense and appropriate for the accused." R.C.M. 1107(d)(2). The convening authority must consider any matters submitted by the accused pursuant to Article 60(b). Article 60(c)(2), UCMJ; see also R.C.M. 1105, 1106(f), 1107(b)(3)(A)(iii).

In the performance of post-trial duties, a convening authority acts in a "role . . . similar to that of a judicial officer." United States v. Fernandez, 24 M.J. 77, 78 (C.M.A. 1987)(citing United States v. Boatner, 20 C.M.A. 376, 43 C.M.R. 216 (1971)). The requirement for impartiality assures that the convening authority gives full and fair consideration to matters submitted by the accused and determines appropriate action on the sentence. "As a matter of right, each accused is entitled to an individualized, legally appropriate, and careful review of his sentence by the convening authority." Fernandez, 24 M.J. at 78. This right is violated where a convening authority cannot or will not approach post-trial responsibility with the requisite impartiality. Under such circumstances, a convening authority must be disqualified from taking action on a record of court-martial. See Fernandez, 24 M.J. at 79; Howard, 23 C.M.A. at 192, 48 C.M.R. at 944.

Our decisions disqualifying convening authorities from taking post-trial action have fallen into two categories. In the first category, a convening authority will be disqualified if he or she is an accuser, has a personal interest in the outcome of the case, or has a personal bias toward the accused. See, e.g.,

United States v. Voorhees, 50 M.J. 494 (C.A.A.F. 1999); United States v. Crossley, 10 M.J. 376 (C.M.A. 1981); United States v. Conn, 6 M.J. 351 (C.M.A. 1979); United States v. Jackson, 3 M.J. 153 (C.M.A. 1977); see also Article 1(9), UCMJ, 10 U.S.C. § 801(9)(2002). In the second category, we have found convening authorities to be disqualified if they display an inelastic attitude toward the performance of their post-trial responsibility. See, e.g., Fernandez, 24 M.J. at 79; Howard, 23 C.M.A. at 192, 48 C.M.R. at 944. We review de novo claims that a convening authority was disqualified from taking action on a court-martial sentence. See Conn, 6 M.J. at 353.

## Discussion

Appellant has not argued that MG F was an accuser or possessed a personal, unofficial interest in Appellant's case. Rather, Appellant claims that the convening authority's comments "reflected his animosity toward drug users and his inelastic attitude about the clemency process as a whole." The Government responds that "[w]hile Major General [F's] statements were strong, they do not demonstrate a fixed and inelastic attitude toward dealing with clemency petitions." The Government has not disputed the fact that MG F made the comments attributed to him. Thus, for purposes of this appeal, we will assume that MG F made comments substantially as reported by trial defense counsel. We proceed to review those comments to determine whether MG F possessed an inflexible, disqualifying attitude toward his post-trial responsibilities.

It is not disqualifying for a convening authority to express disdain for illegal drugs and their adverse effect upon good order and discipline in the command.  A commanding officer or convening authority fulfilling his or her responsibility to maintain good order and discipline in a military organization need not appear indifferent to crime.  Adopting a strong anti-crime position, manifesting an awareness of criminal issues within a command, and taking active steps to deter crime are consonant with the oath to support the Constitution; they do not per se disqualify a convening authority.  See Fernandez, 24 M.J. at 78-79; United States v. Harrison, 19 C.M.A. 179, 182, 41 C.M.R. 179, 182 (1970); United States v. Hurt, 9 C.M.A. 735, 761-62, 27 C.M.R. 3, 44-45 (1958).

In Fernandez, the convening authority issued a policy letter to all battalion commanders.  That letter characterized illegal drugs as a "threat to combat readiness" and reminded the battalion "commanders that 'detection and treatment of drug abusers' should 'be a primary goal'."  The convening authority directed commanders to "personally screen the names of all court member nominees . . . to ensure that only the most mature officers and NCOs would be detailed for court-martial duty."  The policy letter stated that the "full weight of the military justice system must be brought to bear against these criminals."  The letter also told commanders to consult with legal advisors before taking action.  24 M.J. at 79.

We found that the policy letter "reveal[ed the convening authority's] serious concern about preventing the illegal distribution of drugs in the force under his command" and that

7

"the letter taken as a whole indicate[d] a flexible mind regarding the legally appropriate ways in which to deal with drug dealers."  Id.

Although strong, the policy letter in Fernandez was balanced, including references to treatment of drug abusers, ensuring the "most mature" court members, and seeking legal advice before disposing of offenses.  We held that the record did not demonstrate predisposition to take any particular post-trial action and that the convening authority was not disqualified under Article 60.  Id.

In the instant case, MG F made direct reference to his post-trial role, asserting that those convicted of using drugs "should not come crying to him about their situations or their families[']."  We believe that these words reflect an inflexible attitude toward the proper fulfillment of post-trial responsibilities in cases involving convictions for wrongful use of controlled substances.  Unlike the convening authority in Fernandez, MG F's comments lacked balance and transcended a legitimate command concern for crime or unlawful drugs.

Regardless of the nature of the offense, a convicted servicemember is entitled to individualized consideration of his case post-trial.  That individualized consideration must be by a neutral convening authority capable of fulfilling his or her statutory responsibilities.  Statements reflecting an unwillingness to consider each case fully and individually create a perception that a convicted servicemember will be denied the material right to individualized post-trial consideration and action.  Where a convening authority reveals that the door to a

full and fair post-trial review process is closed, we have held that the convening authority must be disqualified.

In Howard, the convening authority issued a letter communicating his views to convicted drug dealers. In that letter, he informed them that their pleas for clemency would be answered in the following manner: "'No, you are going to the Disciplinary Barracks at Fort Leavenworth for the full term of your sentence and your punitive discharge will stand.' Drug peddlers, is that clear?" 23 C.M.A. at 191, 48 C.M.R. at 943. Our Court held that the convening authority was disqualified from taking action on those cases because his statement demonstrated an inelastic attitude toward their clemency requests. Id. at 192, 48 C.M.R. at 944.

In United States v. Wise, 6 C.M.A. 472, 20 C.M.R. 188 (1955), we found that a convening authority's policy that "he would not consider the retention in the military service of any individual who had been sentenced to a punitive discharge," to be "contrary to the intent and spirit of the Uniform Code of Military Justice and the provisions of the Manual[.]" Id. at 474, 476, 20 C.M.R. at 190, 192. In both cases, the convening authority "set[] forth in unmistakable terms" an unwillingness to apply required standards and give individualized consideration during the post-trial review process. Howard, 23 C.M.A. 191, 48 C.M.R. at 943. See also United States v. Walker, 56 M.J. 617 (A.F. Ct. Crim. App. 2001).

The plain meaning of MG F's words is equally as "unmistakable." He erected a barrier to clemency appeals by convicted drug users who wished to have "their situation or

families[']" considered; he said, "Don't come." He revealed his attitude toward the clemency process under such circumstances; he considered pleas for sentence relief as "crying." Finally, his words reflected that the barrier and attitude related directly to his post-trial role as a convening authority: "Don't come crying to me." These words unmistakably reflect an inelastic attitude and predisposition to approve certain adjudged sentences. This attitude is the antithesis of the neutrality required of a "commander's prerogative that is taken in the interests of justice, discipline, mission requirements, clemency, or other appropriate reasons." Id. at 618 (citations omitted).

The Government has called to our attention a court-martial order reflecting that MG F provided relief in the form of reducing forfeitures for another Airman convicted, pursuant to his pleas, of using and distributing ecstasy. We need not decide whether the convening authority's action in a separate case would be sufficient to dispel evidence of an inelastic attitude. The bare order in that case does not provide information about the facts and circumstances of that case, including the timing of the convening authority's action in relation to the command briefings at issue here, nor are we privy to any circumstances surrounding the clemency or plea bargaining process in that case. Therefore, we are not persuaded that MG F in fact possessed the required impartiality with regard to his post-trial responsibilities.

## Decision.

The decision of the United States Air Force Court of Criminal Appeals is reversed, and the action of the convening

authority is set aside.  The case is returned to the Judge
Advocate General of the Air Force for a new review and action
before a different convening authority.