# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40113**

————————————

**UNITED STATES**
*Appellee*

v.

**Maxwell A. JONES**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 October 2022

————————————

*Military Judge:* Wesley A. Braun (pre-referral); Willie J. Babor.

*Sentence:* Sentence adjudged on 25 January 2021 by GCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 30 March 2021: Dishonorable discharge, confinement for 3 years, and reduction to E-1.

*For Appellant:* Major Megan E. Hoffman, USAF; Captain Alexandra K. Fleszar, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, Appellate Military Judges.

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, consistent with his pleas and pursuant to a pretrial agreement (PTA), of two charges and three specifications of making a false official statement, two charges and five specifications of larceny, two charges and two

specifications of forgery, and one charge and specification of wire fraud, in violation of Articles 107, 121, 123, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921, 923, 934.[1] The general court-martial sentenced Appellant to a dishonorable discharge, confinement for four years, and reduction to the grade of E-1. In accordance with the PTA, the convening authority approved only three years of the adjudged confinement. The convening authority took no other action on the sentence; denied Appellant's request for deferment of confinement, automatic forfeitures, and reduction in grade; and denied Appellant's request for waiver of automatic forfeitures.

Appellant raises four assignments of error, asking us to consider whether: (1) this court should remand this case for new post-trial processing because the convening authority did not consider Appellant's complete clemency submission; (2) the convening authority abused his discretion when he denied Appellant's requests for deferment of automatic forfeitures and reduction in grade, and waiver of automatic forfeitures; (3) trial counsel committed prosecutorial misconduct in his sentencing argument; and (4) the Air Force violated Appellant's right to a speedy trial when it did not docket his appeal within 150 days of sentencing.[2] We have carefully considered issues (2), (3), and (4), and find they warrant neither further specific discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and the sentence.

## I. BACKGROUND

In 2006, the year Appellant first enlisted in the Air Force, he married DP. Within two years, they were divorced. Appellant learned the divorce was final in 2009.

Appellant remained unmarried, yet collected basic allowance for housing (BAH) at the with-dependent rate for almost a decade. He certified and recertified on official Air Force documents that he was eligible for BAH based on

---

[1] Appellant was convicted of offenses occurring in 2015, 2016, 2017, and across those years. In this opinion, references to the punitive articles of the UCMJ correspond to the edition of the *Manual for Courts-Martial, United States,* applicable to the dates alleged in the specification. The charges and specifications were referred to trial after 1 January 2019; accordingly, all references to the Rules for Courts-Martial (R.C.M.), and, except where noted, to the UCMJ, are to the *Manual for Courts-Martial, United States* (2019 ed.). *See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–90 (8 Mar. 2018).

[2] Appellant personally raised issues (3) and (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

being married to DP. During the charged period of May 2015 to July 2017,[3] Appellant obtained more than $7,000.00 in BAH to which he was not entitled.

In May 2015, following a deployment overseas, Appellant applied for family separation allowance (FSA). On the application, he asserted he was "not divorced or legally separated from his spouse." Appellant received $175.00 in FSA for the charged period of late May 2015. Appellant deployed again, in the fall of 2016. After his return, in February 2017 Appellant applied for FSA, again asserting he was not divorced or legally separated. Appellant received $1,100.00 in FSA for this deployment.

In April 2016, Appellant obtained a loan from a bank to purchase a motorcycle. He falsified some of the personal information he provided in order to conceal his identity. Appellant received $11,190.00 from the bank, and never intended to repay the loan.

In June 2016, Appellant completed an electronic questionnaire used to renew his security clearance. Appellant falsely answered "no" to the questions: "In the past seven (7) years, have you been over 120 days delinquent on any debt not previously entered?" and "You are currently over 120 days delinquent on any debt?" Appellant knew, in fact, that he had been, and was, over 120 days delinquent on several debts.

Appellant employed several schemes to wrongfully obtain money to which he was not entitled. Appellant researched how to make and use forged checks and fake credit cards, purchased supplies to create them, and did, in fact, make them. He purchased stolen personal information through hidden Internet sites to use for the credit cards.

Between July 2016 and July 2017, Appellant forged 17 checks. He either created the checks using his check-creating software, or scanned and changed a real check using his editing software. He intended to use the checks to obtain money, either for himself or for a friend; however, most of the checks either were not deposited or did not "pay out."

In August 2016, Appellant used his bank's mobile-deposit feature to successfully deposit two checks. The first, in the amount of $1,936.00, was a student-loan check he already had deposited in 2014. The second was a check he forged, in the amount of $3,600.00. Appellant's bank placed funds in Appellant's account as a result of these two deposits. In all, between 31 July 2016 and 18 October 2016, Appellant deposited $19,411.00 in fraudulent checks into

---

[3] The charged time period began 5 years before preferral of charges, and ended the day before Appellant remarried.

his bank accounts, which deposits the bank later rejected. Appellant's conduct caused his bank to write off over $8,820.00 in fraudulent charges.

In July, August, and September 2017, Appellant used his fraudulent credit cards to obtain mostly goods and services, including airline tickets and hotel stays. He used the credit cards at either the point of sale or over the Internet. Appellant used three credit cards in the name of one victim to make purchases totaling $20,750.00. For four other victims, Appellant used one card each, and fraudulently obtained $5,119.32, $13,438.00, $291.30, and $2,518.00, respectively.

On 24 August 2017, Appellant attempted to purchase two airline tickets at an airport ticket counter: one for his friend to return to Arkansas, and one for himself to get to Baltimore to join a rotator flight for his permanent change of station to Ramstein Air Base. He used two fraudulent credit cards he had used before, but both were declined. Two days later, he returned to the airline ticket counter, and tried a third fraudulent credit card. After it was declined, Appellant paid cash for his flight. He then requested a refund, but became nervous and left before he could receive the refund. Authorities at the airport initiated an investigation into Appellant's use of fraudulent credit cards, and subsequently notified the Air Force Office of Special Investigations.

## II. DISCUSSION

### A. Additional Background

Appellant was sentenced on 25 January 2021. On 3 February 2021, trial defense counsel submitted a memorandum requesting, on behalf of Appellant, deferment of confinement, reduction in grade, and automatic forfeitures, and waiver of automatic forfeitures. Additionally, Appellant requested, "to the extent it is authorized by law," that the convening authority "take clemency action (*e.g.* to disapprove findings, or to commute [Appellant's] sentence) to the maximum extent possible pursuant to [his] Article 60[4] authority." The three-page memorandum listed as attachments (1) Appellant's statement for relief with an eight-page attachment, (2) a Department of Defense form indicating Appellant's dependents, and (3) a statement from the mother of Appellant's eldest son JJ. Paragraph 7 of the memorandum referenced (2) and (3):

> In addition, with respect to the deferment of the adjudged reduction in grade and automatic forfeitures, [Appellant's] dependent son, [JJ], will benefit from this action (Attachment 2). Ms. [SJ,

---

[4] We presume Appellant referred to Article 60, UCMJ, *Manual for Courts-Martial, United States* (2016 ed.).

JJ's] mother, submitted a statement for your consideration. (Attachment 3).

Trial defense counsel then explained how the deferments would help Ms. SJ care for JJ. He detailed Ms. SJ's weekly earnings and financial situation, and Appellant's history of providing support to Ms. SJ for JJ. The memorandum ends with a request that, if the deferments are denied, the convening authority waive forfeiture of pay for the benefit of JJ. The memorandum plus attachments ("submission") totaled 17 pages.

On 9 March 2021, the convening authority signed a Decision on Action memorandum, addressing several areas. The convening authority (1) took no action on the findings; (2) took action on the sentence by reducing the confinement to three years "to comply with the agreed-upon terms" in the PTA; (3) identified the deferments Appellant requested on 3 February 2021, and denied them, explaining his reasons; (4) identified the waiver of automatic forfeitures Appellant requested on 3 February 2021, and denied it, explaining his reasons; (5) directed Appellant to take appellate leave following completion of his sentence to confinement; and (6) asserted he consulted with his staff judge advocate and "considered matters timely submitted by [Appellant] under [Rule for Courts-Martial (R.C.M.)] 1106."

As Appellant noted in his brief with this court, his complete submission to the convening authority was not part of the record docketed with this court—Attachments 2 and 3 were missing. In response to Appellant's brief, the Government moved this court to attach a declaration from the Chief of Military Justice (CMJ) for the convening authority, and its four attachments; the court granted the unopposed motion. In his declaration, the CMJ stated his office completed a legal review of Appellant's submission. He stated, "I recall writing the legal review on this action, and know that I included all 17 pages for the convening authority's review." The CMJ also stated the legal office's usual practice was to provide an accused's entire submission to the convening authority and "there is no reason we would have deviated in this case." The CMJ attached to his declaration Appellant's complete submission, dated 3 February 2021, comprising 17 pages.

**B. Law and Analysis**

Appellant claims (1) that the record of trial is incomplete because of the missing attachments to the submission, and (2) that due to the same error, the record does not indicate with certainty that the convening authority reviewed Appellant's entire submission before taking action in this case. As a remedy, he requests we remand his case for new post-trial processing. We find relief is not warranted.

A record of trial must include items listed in R.C.M. 1112(b)(1–9). *See* R.C.M. 1112(d)(2) ("A record of trial is complete if it complies with the requirements of subsection (b)."). Requests for deferment and for clemency are not required contents of a record of trial under R.C.M. 1112(b).

The Government, through a court reporter, is required to attach certain items *to* a record of trial before a certified record is forwarded for appellate review. R.C.M. 1112(f). Any matter filed by an appellant in clemency under R.C.M. 1106, as well as requests for deferments, are among those items the Government is required to attach to the record of trial. R.C.M. 1112(f)(3–4).

We granted the Government's motion to attach the CMJ's declaration and Appellant's complete submission to the record for our appellate review.[5] Thus, we find the matters required to be attached to the record under R.C.M. 1112(f)(3–4) are now attached. Appellant alleges no other basis for finding the record of trial incomplete under R.C.M. 1102(b), and we find none.

We are confident the convening authority reviewed Appellant's entire 17-page clemency submission before taking action in his case. In his memorandum, trial defense counsel specifically referred to Attachments 2 and 3 as supporting the requests for deferment, and listed them as attachments. In his Decision on Action memorandum dated 9 March 2021, the convening authority stated he consulted with his staff judge advocate and considered matters Appellant submitted under R.C.M. 1106. In the legal review to the convening authority dated 8 March 2021, after recommending against deferment, the CMJ stated, "This is a compelling case for waiver of forfeitures, where the money would be paid directly to [Appellant's] son or guardian, who could certainly use the support."[6] The legal review listed as an attachment "AB Jones' Clemency Matters, dtd 3 Feb 21 (17 pgs)." The CMJ's declaration strengthens our confidence. While he does not know with certainty exactly what was handed to the convening authority, the CMJ knows his office prepared advice for the convening authority which included Appellant's complete submission.

---

[5] We find that the matter of the missing clemency attachments is raised by the record, and thus we may consider the declaration and its attachments in conducting our review. *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020) (holding Courts of Criminal Appeals may consider affidavits when doing so is necessary to resolve issues raised by materials in the record).

[6] Even so, the CMJ recommended against granting waiver of forfeitures because Appellant's term of service expired. He explained: "you may waive forfeitures for the period of 8 February to 13 February (six days), but this will result in a maximum of only $357.00—minus taxes—paid to [Appellant's] dependent, and is unlikely to achieve the benefit sought."

We find no support for the argument that because Attachments 2 and 3 were missing from the record of trial when forwarded to this court, the convening authority was not presented with them. Indeed, under these circumstances and applying the presumption of regularity, we are convinced that the convening authority saw Appellant's deferment and clemency request memorandum and all its attachments. *See United States v. Wise*, 6 C.M.A. 472, 478 (C.M.A. 1955) ("[T]he presumption of regularity requires us to presume that [the convening authority] carried out the duties imposed upon him by the [UCMJ] and the Manual [for Courts-Martial].") We conclude that remand for new post-trial processing is not warranted.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[7] Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] The convening authority did not specifically approve Appellant's entire sentence. Although Appellant did not identify this error on appeal, we tested it for material prejudice and found none. *See generally United States v. Brubaker-Escobar*, 81 M.J. 471 (C.A.A.F. 2021) (per curiam). The convening authority's memorandum conveys an intention to provide no additional relief to Appellant. Moreover, it is speculative to conclude the convening authority would have granted Appellant additional relief, much less in the absence of a specific request.