*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Corey N. WALL, Specialist**
United States Army, Appellant

**No. 19-0143**

Crim. App. No. 20160235

Argued January 14, 2020—Decided April 24, 2020

Military Judge: Lanny Acosta

For Appellant: *Captain Rachele A. Adkins* (argued); *Lieutenant Colonel Tiffany D. Pond, Lieutenant Colonel Christopher D. Carrier,* and *Captain Heather M. Martin* (on brief); *Major Todd W. Simpson*.

For Appellee: *Major Jonathan S. Reiner* (argued)*; Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams, Major Hannah E. Kaufman* and *Captain Christopher T. Leighton* (on brief); *Captain Marc B. Sawyer*.

Chief Judge STUCKY delivered the opinion of the Court, in which Judges OHLSON and SPARKS joined. Judge RYAN filed a separate dissenting opinion in which Judge MAGGS joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.

The issue presented in this case is whether the United States Army Court of Criminal Appeals (CCA) was authorized to reassess Appellant's sentence after setting aside the sentence approved by the convening authority. As a consequence of granting that issue for review, we necessarily specified an additional issue, asking whether the granted issue was ripe for review. We hold that the issue was ripe for review and that, by setting aside the sentence, there was no approved sentence for the CCA to reassess.

## I. Background

A military judge sitting alone as a general court-martial convicted Appellant, contrary to his pleas, of rape and sexual assault. Article 120, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 920 (2012). The convening authority approved the sentence adjudged: a dishonorable discharge, confinement for fifteen years, and reduction to the grade of E-1.

The CCA held that the military judge's consideration of the evidence of each charged offense as propensity evidence for the other charged offense, under Military Rule of Evidence 413, violated this Court's holdings in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), and *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). *United States v. Wall*, No. ARMY 20160235, 2018 CCA LEXIS 479, at *14, 2018 WL 4908172, at *5 (A. Ct. Crim. App. Oct. 5, 2018). The CCA affirmed the rape conviction but set aside the sexual assault conviction and the sentence. *Id.* at *15, 2018 WL 4908172, at *6. It authorized the convening authority to choose one of the following options:

> (1) order a rehearing on [the sexual assault offense] and the sentence; (2) dismiss [the sexual assault offense] and order a rehearing on the sentence only; or (3) dismiss [the sexual assault offense] and reassess the sentence, affirming no more than a dishonorable discharge, confinement for ten years, total forfeiture of all pay and allowances, and reduction to E-1.[1]

*Id*. at *15–16, 2018 WL 4908172, at *6. In a footnote, the CCA further concluded:

> In reassessing the sentence we are satisfied that the sentence adjudged, absent Specification 1 of The Charge, would have been at least a dishonorable discharge and confinement of ten years. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). The reassessment being both appropriate and purging the record as it stands of error does not otherwise limit the sentence that may be adjudged at a rehearing. *See* UCMJ, art. 63.

*Id.* at *16 n.3, 2018 WL 4908172, at *6 n.3.

---

[1] The convening authority *approves* rather than *affirms* a sentence. Rule for Courts-Martial (R.C.M.) 1107(f)(4) (2016 ed.).

The CCA granted Appellant's request for reconsideration, directed minor corrections to its original opinion, and affirmed all other aspects of its opinion and the judgment of the court. *United States v. Wall*, No. ARMY 20160235 (A. Ct. Crim. App. Nov. 16, 2018) (order).

## II. Discussion

The parties agree that we are reviewing a CCA sentence reassessment and, therefore, this Court should review both issues for an abuse of discretion. That is not the standard for the issues we specified. We asked: (1) whether the issue is ripe for review; and (2) whether a CCA is authorized to set aside a sentence and then reassess it before remanding the case to the convening authority. These are clearly questions of law that we review de novo. *See Waltman v. Payne*, 535 F.3d 342, 348 (5th Cir. 2008) (ripeness); *United States v. English*, 79 M.J. 116, 121 (C.A.A.F. 2019) (scope of an appellate court's authority).

We begin with the authority of the CCAs. A CCA "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012).

> If the Court of Criminal Appeals sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing. If it sets aside the findings and sentence and does not order a rehearing, it shall order that the charges be dismissed.

Article 66(d), UCMJ.

> The Judge Advocate General shall, unless there is to be further action by the President, the Secretary concerned, the Court of Appeals for the Armed Forces, or the Supreme Court, instruct the convening authority to take action in accordance with the decision of the Court of Criminal Appeals. If the Court of Criminal Appeals has ordered a rehearing but the convening authority finds a rehearing impracticable, he may dismiss the charges.

Article 66(e), UCMJ.

The statute does not explicitly tell us how to handle a case in which a CCA affirms some of the convictions, sets aside others, and authorizes a rehearing. Nevertheless, under his authority to make procedural rules, Article 36(a), UCMJ, 10 U.S.C. § 836(a) (2012), the President has issued the following:

> If a superior authority has approved some of the findings of guilty and has authorized a rehearing as to other offenses and the sentence, the convening authority may, unless otherwise directed, reassess the sentence based on the approved findings of guilty and dismiss the remaining charges. Reassessment is appropriate only where the convening authority determines that the accused's sentence would have been at least of a certain magnitude had the prejudicial error not been committed and the reassessed sentence is appropriate in relation to the affirmed findings of guilty.

R.C.M. 1107(e)(1)(B)(iv) (2012 ed.).

## A. Jurisdiction

"'[E]very federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction.'" *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017) (alterations in original) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). This Court has a duty to review the record in all cases reviewed by a CCA in which the accused's petition establishes good cause. Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2012). This Court, however, "may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals." Article 67(c), UCMJ.

The first question, then, is whether the CCA set aside the sentence as incorrect in law. The CCA set aside the sexual assault finding because the military judge considered evidence of each charged offense as propensity evidence for the other, in violation of our precedents. *Wall*, 2018 CCA LEXIS 479, at *14, 2018 WL 4908172, at *5. That was clearly a matter of law. The CCA could have simply dismissed that specification and determined the appropriate sentence. *See* Article 66(c), UCMJ. It chose instead to permit the prosecution to retry the accused on the charge that was set aside. As the original sentence was based in part on the finding of guilty that

had been set aside, the CCA set aside the sentence to effectuate the possibility of a rehearing on findings and sentence. Under these circumstances, we conclude that the sentence was set aside as incorrect in law and, therefore, we have jurisdiction. This is consistent with our resolution of two other cases, in which we issued orders stating that we had jurisdiction, although we declined to resolve the granted issue, finding it was not ripe. *United States v. Long*, 79 M.J. 99 (C.A.A.F. 2019) (order); *United States v. Hopkins*, 78 M.J. 130 (C.A.A.F. 2018) (order).

The Government makes two jurisdictional arguments, First, it contends that this Court will exceed its "congressionally circumscribed jurisdiction by providing sentencing relief." This misses the point. We are not reviewing the sentence in this case; we are instead determining the scope of the CCA's authority in remands.

Second, the Government asserts that as the CCA merely vacated the sentence, rather than set it aside as a matter of law, this Court is without jurisdiction. But in its judgment, the CCA specifically stated: "The sentence is set aside." *Wall*, 2018 CCA LEXIS 479, at \*15, 2018 WL 4908172, at \*6. Furthermore, whether the sentence is "set aside" or "vacated" is of little import. The definition of "set aside" is to "annul or vacate (a judgment, order, etc.)." *Black's Law Dictionary* 1580 (10th ed. 2014). The terms "set aside" and "vacate" are actually a "doublet." They are often used together to note the same meaning, one in old English and the other in old French. Bryan A. Garner, *Garner's Dictionary of Legal Usage* 812 (3d ed. 2011).

## B. Ripeness

"Ripeness" is the "state of a dispute that has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made." *Black's Law Dictionary* 1524 (10th ed. 2014).

> [The doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging

> parties. The problem is best seen in a twofold aspect,
> requiring us to evaluate both the fitness of the issues
> for judicial decision and the hardship to the parties
> of withholding court consideration.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).

The ripeness doctrine originates in the Constitution's Article III case or controversy language. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Nevertheless, Article I courts, such as ours, "generally adhere" to this doctrine and ordinarily decline to consider an issue that is "premature." *United States v. Chisholm*, 59 M.J. 151, 152 (C.A.A.F. 2003). If the appeal is not ripe, it deprives the court of subject matter jurisdiction and must be dismissed. 1 Lissa Griffin, *Federal Criminal Appeals* § 3:46 (2019 ed.).

In *Texas v. United States*, the Supreme Court employed sweeping language to describe ripeness: "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." 523 U.S. 296, 300 (1998) (internal quotation marks omitted) (citation omitted). But in analyzing the granted issue, the Supreme Court employed the *Abbott* two-part test: "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 301 (internal quotation marks omitted) (quoting *Abbott*, 387 U.S. at 149). The Supreme Court determined that the claim that Texas suffered the immediate hardship of a threat to federalism was "too speculative" and "insubstantial." *Id.* at 302.

This Court has routinely denied, as not ripe for review, petitions for grant of review in cases in which the CCA has ordered a rehearing. *See, e.g.*, *United States v. Clark*, 78 M.J. 371 (C.A.A.F. 2019) (summary disposition). In this case, however, the issue concerns the terms of the remand itself: Whether the CCA is authorized to provide what amounts to an advisory opinion by declaring what sentence to confinement it would accept as appropriate.

The Supreme Court found the issue ripe in *Abbott* because the regulation at issue had a "direct effect on the day-to-day business" of the plaintiffs, even though the regulation had not yet been enforced. 387 U.S. at 152. Under the *Abbott* test, the

issue in Appellant's case is fit for resolution. First, the issue "is a purely legal one," which can be resolved without further proceedings. *Id.* at 149. Resolution of the issue is limited to this Court's interpretation of the UCMJ and the President's Rules for Courts-Martial.

Second, unlike in *Texas*, the adverse effect of the CCA's ruling is neither remote nor abstract. 523 U.S. at 301. The CCA sent a clear message to the convening authority that it would approve a sentence that included confinement of ten years if the convening authority decided not to order a rehearing. While the convening authority was not prohibited from ordering a rehearing, the possibility he would do so is remote in light of the time and expense of such a hearing, the difficulty in obtaining witnesses almost three years after Appellant's initial trial, and the seeming certainty that the CCA would affirm a sentence to confinement of ten years for the affirmed finding of guilty.

Furthermore, resolution of the issue promotes, rather than degrades judicial economy—minimizing duplication of effort and avoiding wasting the court's time and resources. The CCA has rendered similar rulings, setting aside a sentence and then reassessing it, in at least seven other cases. *See* Appendix I. As a matter of judicial economy, it makes sense to resolve this issue now, before more such cases arise.

Appellant has also shown hardship, as the CCA's order on his case "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott*, 387 U.S. at 152. Without our intervention, Appellant's case will be returned to the convening authority to make an independent decision on whether to order a rehearing or to reassess the sentence. And the CCA has already ruled that it would affirm if the convening authority elected to forgo a rehearing and reassess the sentence to include confinement for ten years. If this Court waits until the convening authority reassesses the sentence, this Court may have no way of determining whether the convening authority actually exercised his independent judgment or was unduly influenced by the CCA.

We, therefore, conclude the issue is ripe for review.

## C. Authority for the Order

"In a case referred to it, the Court of Criminal Appeals may act only with respect to the … sentence *as approved by the convening authority*." Article 66(c), UCMJ (emphasis added). By setting aside Appellant's approved sentence and remanding, the CCA extinguished the approved sentence and, thereby, its authority to further act on the sentence until the case returned from the convening authority.

The Government argues that: (1) in *United States v. Harris*, 53 M.J. 86 (C.A.A.F. 2000), this Court tacitly condoned the CCA's action in this case; (2) Article 66(f)(3), UCMJ, authorized the CCA to order further proceedings subject to such limitations as the court may direct; and (3) the convening authority was not prohibited from approving any lesser sentence. We find none of these arguments persuasive.

This Court has not condoned the CCA's practice in the past. In *Harris*, the CCA set aside some of the appellant's convictions and remanded to the convening authority with three options: (1) to order a rehearing on the set aside charges and the sentence; (2) to order a sentence rehearing alone if (1) was impracticable; and (3) if the second option was impracticable to reassess the sentence. 53 M.J. at 87. The CCA in that case did not reassess the sentence after setting it aside and remanding.

The Government also argues that the CCA did not abuse its discretion in ordering a rehearing with limitations providing direction to the convening authority because it is specifically authorized by Article 66(f)(3), UCMJ. Putting aside whether Article 66(f)(3) authorizes the CCA's judgment, that provision is contained in the Military Justice Act of 2016, and does not apply to cases such as Appellant's, which was tried and remanded before the Act's January 1, 2019, effective date. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5330, 130 Stat. 2000, 2932 (2016). Neither the UCMJ nor the Rules for Courts-Martial applicable to Appellant's case authorize the CCA to reassess the sentence after remand.

We agree with the Government that the remand did not require the convening authority to approve the sentence as "reassessed" by the CCA. But that is not Appellant's point. He

asserts that the "reassessment" was an advisory opinion that would taint what is supposed to be an independent assessment by the convening authority.

An advisory opinion is "an opinion issued by a court on a matter that does not involve a justiciable case or controversy between adverse parties." *Chisholm*, 59 M.J. at 152 (citation omitted). While courts established under Article III of the Constitution may not issue advisory opinions, courts established under Article I, such as this Court and the Courts of Criminal Appeals, "generally adhere to the prohibition on advisory opinions as a prudential matter." *Id.* (citation omitted).

But the CCA's "reassessment" was more than just an advisory opinion. It sent a message to both the convening authority and members of the CCA who would sit on the case when it returned after remand: You are not required to follow this advice, but this court has already determined that confinement for ten years was part of an appropriate sentence.

Appellant's case is similar in some respects to *Peugh v. United States,* 569 U.S. 530 (2013). There, the issue presented was whether application of sentencing guidelines that had increased in severity since the appellant had committed his offenses violated the Ex Post Facto Clause. *Id.* at 533. The Supreme Court rejected the government's argument that since the guidelines were merely advisory, there was no ex post facto problem. *Id.* at 539. "The touchstone of this Court's inquiry is whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 539 (internal quotation marks omitted) (citation omitted). The Supreme Court went on to hold that the risk that the increased guidelines affected the trial court's sentencing decision was too great. *Id.* at 550.

Subject to the limitations of the UCMJ and the Rules for Courts-Martial, the decision to reassess the sentence, and what sentence to approve, is solely that of the convening authority. Article 60, UCMJ, 10 U.S.C. § 860 (2012); R.C.M. 1107(e)(2)(B)(iii) (2016 ed.); *United States v. Reed*, 33 M.J. 98, 99–100 (C.M.A. 1991). While not requiring the convening authority to adopt its conclusions, the CCA's "reassessment" sent a signal to the convening authority that confinement for

ten years was appropriate. The risk that the CCA's "reassessment" will improperly influence the convening authority's action in his exercise of his discretion is too great.[2]

### III. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed as to its finding of guilty for the rape specification. The judgment is reversed in part as to the sentence. The record is returned to the Judge Advocate General of the Army for remand to the CCA, which shall: (1) dismiss the sexual assault specification and itself reassess the sentence; or (2) remand to the convening authority who shall (a) order a rehearing on the sexual assault specification and the sentence, in view of the affirmed rape specification or (b) dismiss the sexual assault specification and order a rehearing on the sentence for the affirmed rape specification standing alone.

---

[2] During oral argument, Government counsel asserted that the CCA's "reassessment" of the sentence would save time for that panel or a new panel when the case returned for further review. We reject any suggestion that the panel that reviews Appellant's case in the future is authorized to give it any less than the full consideration of the appropriateness of the sentence required by Article 66(c), UCMJ.

**Appendix I**

The CCA's judgment in the following seven other cases is similar to that of Appellant's case.

(1) *United States v. Williams*, No. ARMY 20160231, 2019 CCA LEXIS 288, at *21 & n.13, 2019 WL 2949401, at *8 & n.13 (A. Ct. Crim. App. July 3, 2019);

(2) *United States v. Solomon*, No. ARMY 20160456, 2019 CCA LEXIS 149, at *36 & n.23, 2019 WL 1528078, at *15 & n.23 (A. Ct. Crim. App. Apr. 3, 2019);

(3) *United States v. Moynihan*, No. ARMY 20130855, 2018 CCA LEXIS 610, at *11 & n.5, 2018 WL 6334226, at *4 & n.5 (A. Ct. Crim. App. Nov. 26, 2018), *review dismissed*, 78 M.J. 371 (C.A.A.F. 2019);

(4) *United States v. Long*, No. ARMY 20150160, 2018 CCA LEXIS 512, at *34 & n.16, 2018 WL 5623640, at *12 & n.16 (A. Ct. Crim. App. Oct. 26, 2018), *review dismissed*, 79 M.J. 99 (C.A.A.F. 2019), *and reconsideration denied*, 79 M.J. 184 (C.A.A.F. July 11, 2019);

(5) *United States v. Hernandez*, No. ARMY 20160217, 2018 CCA LEXIS 389, at *13 & n.4, 2018 WL 3854046, at *5 & n.4 (A. Ct. Crim. App. Aug. 10, 2018);

(6) *United States v. Gonzalez*, No. ARMY 20160363, 2018 CCA LEXIS 327, at *13—14 & n.8, 2018 WL 3326646, at *6 & n.8 (A. Ct. Crim. App. July 3, 2018); and

(7) *United States v. Hopkins*, No. ARMY 20140913, 2018 CCA LEXIS 254, at *34–35 & n.15, 2018 WL 2405998, at *12 & n.15 (A. Ct. Crim. App. May 25, 2018).

Judge RYAN, with whom Judge MAGGS joins, dissenting.

In this case Appellant seeks an answer to a legal question: "Whether, after setting aside the sentence and ordering a remand, a service court of criminal appeals is authorized to reassess the sentence and limit the lawful sentence the convening authority may approve." *United States v. Wall*, 79 M.J. 63, 63—64 (C.A.A.F. 2019) (order granting petition for review). But that avenue of relief, like all others that ask a federal court to render a decision, is subject to the ordinary rules of justiciability, rules intended to confine "the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted) (citation omitted).[1] A central tenet of this limitation is the doctrine of ripeness, *see id.* at 352, which "prevent[s] . . . courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotation marks omitted) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

This doctrine draws "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted) (citation omitted). While we are not an Article III court, we "generally adhere to the prohibitions on advisory opinions as a prudential matter." *See, e.g.*, *United States v. Chisholm*, 59 M.J. 151, 152 (C.A.A.F. 2003). This case is not ripe, we imprudently exceed our judicial role by deciding it, and I respectfully dissent.

### A.

In assessing whether a claim is ripe, we agree with the majority that the appropriate framework is set forth in *Abbott*, 387 U.S. at 149, and reiterated in *Texas v. United States*,

---

[1] The Declaratory Judgment Act, for example, provides: "In a *case of actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2018) (emphasis added).

523 U.S. 296, 300–01 (1998) (quoting *Abbott*, 387 U.S. at 149):
" 'fitness of the issues for judicial decision and the hardship to
the parties of withholding court consideration.' "

While a pure question of law may be fit for judicial deci-
sion in theory, that is no invitation for courts to reach out and
decide issues where the harm alleged is speculative: "A claim
is not ripe for adjudication if it rests upon contingent future
events that may not occur as anticipated, or indeed may not
occur at all." *Id.* at 300 (internal quotation marks omitted)
(citation omitted). Accordingly, at least twice this Court sum-
marily dismissed cases in the precise posture of this one with-
out prejudice as unripe because there was a possibility of a
rehearing. *See United States v. Long*, 79 M.J. 99 (C.A.A.F.
2019) (order) (CCA remand included reassessment option
with cap of dishonorable discharge, confinement for forty
years, and reduction to E-1; assigned issues included
"Whether the Army Court abused its discretion by reas-
sessing the sentence after dismissing eleven out of fourteen
specifications, and offering the convening authority the op-
tion to approve an excessive sentence for the remaining spec-
ifications in lieu of a rehearing"); *United States v. Moynihan*,
78 M.J. 371 (C.A.A.F. 2019) (order) (CCA remand included re-
assessment option with cap of dishonorable discharge, con-
finement for forty-two months, and reduction to E-1; sole as-
signed issue was "Whether the Army Court erred when it set
aside Appellant's convictions because of prejudicial error, yet
considered those same convictions when it reassessed the sen-
tence"). The majority fails to distinguish these cases.

While the scope and contours of the CCA's authority may
well present a purely legal question, *Abbott*, 387 U.S. at 149,
there is no cognizable injury to Appellant at this time. Any
harm here necessarily turns on contingent events. *Cf. United
States v. Cabral*, 926 F.3d 687, 694 (10th Cir. 2019) (dismiss-
ing vagueness challenge to supervised release condition as
unripe because "[e]ven assuming a condition is facially prob-
lematic, the mere existence of [such a] condition is ordinarily
not enough to sustain a judicial challenge, even by one who
reasonably believes that the law applies to him and will be
enforced against him" (internal quotation marks omitted) (ci-
tation omitted)). The convening authority has yet to take any

action, and the CCA expressly empowered the convening authority to order a rehearing instead of reassessing the sentence. *United States v. Wall*, No. ARMY 20160235, 2018 CCA LEXIS 479, at \*15—16, 2018 WL 4908172, at \*6 (A. Ct. Crim. App. Oct. 5, 2018) (unpublished). Moreover, the CCA did not dictate what sentence the convening authority must impose,[2] and we have no way of knowing what sentence he might impose if he in fact chooses that option, rather than a rehearing. The harm Appellant complains of thus depends both on the convening authority's selection of the reassessment option and imposition of a sentence of ten years[3]—a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks omitted) (citation omitted).

The harm alleged here is quite different than that deemed sufficiently immediate in *Abbott* and hews far more closely to that deemed too speculative in *Texas*. *Abbott* involved an administrative regulation that forced Abbott Laboratories into a dilemma where they would either incur massive costs by complying with the regulation or face criminal prosecution for non-compliance. 387 U.S. at 152. It was in that context that the Supreme Court deemed resolution of the purely legal question ripe because of the adverse impact on a party.

In contrast, the law challenged in *Texas* prevented the State from imposing two out of ten possible sanctions on school districts that failed to satisfy accreditation criteria. 523 U.S. at 298–300. Unlike the "direct effect on day-to-day business" in *Abbott*, *Texas*, 523 U.S. at 301 (internal quotation marks omitted) (citation omitted), a series of contingent events had to occur for those two options to ever become avail-

---

[2] Indeed, the CCA stated "[t]he reassessment being both appropriate and purging the record as it stands of error *does not otherwise limit the sentence* that may be adjudged at a rehearing." 2018 CCA LEXIS 479, at \*16 n.3, 2018 WL 4908172, at \*6 n.3 (emphasis added).

[3] Worth emphasizing, the ten years at issue is still five years less than the original fifteen-year sentence, which the convening authority could still approve.

able, and the State could not show any district where imposing such sanctions was even likely. *Id.* at 300. As in Texas, the claim here is simply not "ripe for adjudication." *Id.* at 302.

**B.**

The majority nevertheless finds concrete ripeness in the *hypothetical* harm that may *potentially* arise through the CCA's proposed (but non-binding if a rehearing is ordered) reassessment cap *possibly* tainting the convening authority's independent decision-making. By authorizing a reassessment with a sentence cap the CCA considered appropriate, the convening authority was purportedly incentivized to abdicate his duty to independently review Appellant's case and simply rubber stamp the CCA's sentence. Accepting this position divines a concrete injury from both speculation and assumptions that ignore the presumption of regularity afforded convening authorities. *See, e.g.*, *United States v. Masusock*, 1 C.M.A. 32, 35, 1 C.M.R. 32, 35 (1951) ("Courts have long indulged in the legal presumption of regularity in the conduct of governmental affairs."). This imaginary potential for some speculative, unknowable harm is not justiciable harm, and as the dissent in *United States v. Gonzalez* notes, "[w]hen the record is silent on how a convening authority acted, 'the presumption of regularity requires us to presume that he carried out the duties imposed upon him by the Code and the Manual.'" __ M.J. __ (4) (C.A.A.F. 2020) (Maggs, J., with whom Ryan J., joins, dissenting) (quoting *United States v. Wise*, 6 C.M.A. 472, 478, 20 C.M.R. 188, 194 (1955)). This is no less true when seeking, as the majority does, to speculate as to what a convening authority might do.

Nor does invoking the promotion of judicial economy solve the ripeness deficiency. The interest in promoting judicial economy is indeed intended to conserve judicial time and resources and effectuate the interests in "prompt and efficient resolution of controversies," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988), and avoid rules that burden the court with additional litigation, *see McDermott Inc. v. AmClyde*, 511 U.S. 202, 212 (1994). However, it is not intended, and cannot plausibly be offered, as an end run around Article III's limitations on what constitutes a case or controversy suitable for judicial review. It is not clear how resolving

Appellant's claim at this juncture would appreciably promote judicial economy more than if we waited for the convening authority to act. Today's holding will prevent CCAs from ordering these types of remands in the future, but this benefit is unnecessary given the Court's opportunity to decide precisely the same thing in *Gonzalez*—where no one questions whether the issue is ripe—without doing violence to the law on justiciability.

**C.**

Article III's case or controversy limitations apply only prudentially to our Court, *United States v. Wuterich*, 67 M.J. 63, 69 (C.A.A.F. 2008), but this does not license us to imprudently apply them. Especially where we exercise such narrowly circumscribed, strictly construed jurisdiction, *see Loving v. United States*, 62 M.J. 235, 244 n.60 (C.A.A.F. 2005), we should hesitate to read expansively a justiciability doctrine as fundamental as ripeness. Resolving the issue at this stage may well be "efficient," in some generic sense, but so too does it bring us closer to the "plenary administrator" the Supreme Court once admonished. *Clinton v. Goldsmith*, 526 U.S. 529, 536 (1999).

"The military justice system's essential character [is,] in a word, judicial." *Ortiz v. United States*, 138 S. Ct. 2165, 2174 (2018). The majority today strays from this Court's essential judicial character.

I respectfully dissent.